**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| EZEQUIEL MARTINEZ AS TRUSTEE FOR 2227 MISSION CIRCLE LAND TRUST, | § § § | |
| | § | |
| *Plaintiff*, | § | Civil Action No.  SA-12-CV-462-XR |
| | § | |
| v. | § | |
| | § | |
| BANK OF AMERICA, N.A., | § | |
| | § | |
| *Defendant*. | § | |

**ORDER**

On this day the Court considered Defendant's motion to dismiss Plaintiff's amended complaint (Doc. No. 12) and Plaintiff's motion for leave to file a second amended complaint (Doc. No. 19). For the following reasons, the Court GRANTS Defendant's motion to dismiss and DENIES Plaintiff's motion for leave to file a second amended complaint.

**I.**

**A. Factual Background[1]**

Plaintiff Ezequiel Martinez ("Plaintiff") is a real estate investor who owns property at 2227 Mission Circle, San Antonio, Texas, and has formed the 2227 Mission Circle Land Trust. The original owner of the property, Carlos Guerra, purchased the property from First Continental Mortgage Ltd. on September 16, 2009. The original mortgage loan of $126,113 was secured by a deed of trust.

---

[1] The following summary is predicated on facts alleged in Plaintiff's First Amended Complaint.

Plaintiff purchased the property, through the land trust, on January 30, 2012 pursuant to a general warranty deed.[2] Plaintiff does not allege that he assumed the mortgage loan. Plaintiff attempted to confer with Defendant Bank of America ("Defendant") about the status of the loan but was unable to determine if Defendant "was the proper holder and what amount was owed and was delinquent."[3] Defendant had scheduled to foreclose on the property on April 3, 2012, but Plaintiff filed a petition in Texas state court on March 30, 2012, to enjoin foreclosure. Plaintiff alleges that foreclosure is improper for several reasons.

First, Plaintiff alleges that Defendant cannot foreclose because Defendant is not the valid holder or owner of the note.  Plaintiff argues that Defendant must hold or own the note in order to foreclose because under the deed of trust only the lender can foreclose, and the lender is defined in part as "the holder or owner of the note."[4] Plaintiff claims that Defendant is not the valid holder or owner of the note because an assignment of the deed of trust did not also transfer the note and because the assignment was executed by an agent who was not authorized by Mortgage Electronic Registration Systems, Inc. ("MERS").

Plaintiff also alleges that Defendant cannot demonstrate that it has a valid recorded interest in the mortgage because the assignments of the deed of trust were not authorized and are "the result of fraud and are void."[5] Plaintiff further alleges that the loan was securitized and controlled by a pooling and servicing agreement. Plaintiff alleges that the pooling and servicing agreement "states that all transfers or assignments should take place on or before a date within the agreement of or [sic] within 120 days thereafter."[6]

---

[2] *See also* Prop. Second Am. Compl. ¶ 18.
[3] Am. Compl. ¶ 6.
[4] Am. Compl. ¶ 5.
[5] Am. Compl. ¶ 13.
[6] Am. Compl. ¶ 8.

**B. Procedural Background**

Plaintiff filed his original petition in the 225th Judicial District Court of Bexar County, Texas on March 30, 2012, seeking to enjoin Defendant from foreclosing and asserting causes of action for declaratory judgment, violations of the UCC, violations of the Texas Debt Collection Act ("DCA") and Texas Deceptive Trade Practices Act ("DTPA"), common law fraud, and to quiet title. Defendant removed the action to this Court on May 10, 2012, based on diversity.

Plaintiff filed an amended complaint on June 20, 2012, which is the live pleading. Plaintiff's amended complaint seeks injunctive relief and alleges causes of action for declaratory judgment, violations of the UCC, and to quiet title. The amended complaint omits causes of action for common law fraud and for violations of the DCA and DTPA. The amended complaint, however, does contain sporadic references to both the DCA and DTPA under the headings "Causation; damages" and "Attorney's Fees."

Defendant filed a motion to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendant claims that there is no justiciable controversy between Plaintiff and Defendant because Plaintiff is not a party to the note and deed of trust. Defendant also claims that Plaintiff lacks standing to challenge the assignment and that, regardless, Defendant has established that it may properly enforce the deed of trust. Defendant also claims that Plaintiff's quiet title claim fails as a matter of law because Plaintiff cannot plead that he has superior title to the property. Defendant attached several documents to its motion to dismiss, including the note and an allonge to the note, the deed of trust, an assignment document, and a corrected assignment document. Plaintiff filed a response to Defendant's motion to dismiss and also attached several documents. Specifically, Plaintiff attached the deed of trust, the

assignment document, and the corrected assignment document, which had already been attached to Defendant's motion to dismiss, and also attached for the first time a special warranty deed, a warranty deed, and an appointment of substitute trustee document.

In addition to filing a response to Defendant's motion to dismiss, Plaintiff also filed a motion for leave to file a second amended complaint. Plaintiff's proposed second amended complaint reaffirms his allegations that Defendant does not have authority to foreclose because it is not the holder of the note and because there has been no valid assignment of the deed of trust. The proposed second amended complaint also adds significantly more statements regarding the documents that Defendant attached to its motion to dismiss and regarding some of the documents that Plaintiff attached to his response to the motion to dismiss.

In the proposed second amended complaint, Plaintiff first addresses the note and allonge. Plaintiff contends that the allonge contains a "restricted endorsement directly to Bank of America signed by a Shelley Aboloff as vice president of First Continental Mortgage Ltd."[7] Plaintiff also asserts that the note contains a blank indorsement[8] from Defendant. Plaintiff questions why Defendant would indorse the note in blank if Defendant was already the current holder.

In addition to adding pleading statements concerning the note and allonge, Plaintiff also adds statements concerning the "appointment of substitute trustee" document. Plaintiff asserts that the document is signed by Tanyia Hill, who Plaintiff alleges is "an infamous robosigner and employee of DOCX [sic], which is a company that was hired to create documents to fill title

---

[7] Prop. Second Am. Compl. ¶ 4.
[8] Because the term is being used in the context of negotiable instruments, this Court will use the spelling "indorse" rather than "endorse." *See* BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 316 (3d ed. 2011) ("In legal senses relating to negotiable instruments, *indorse* predominates in the U.S., and the word is so spelled throughout the Uniform Commercial Code.").

4

gaps."[9] Plaintiff alleges that Ms. Hill did not have authority to sign the document on behalf of Defendant Bank of America. Plaintiff also contends that the "document points to fact [sic] that Bank of America took over this loan as a result of its merger with Countrywide" and argues that "because the loan originated from First Continental and there is no endorsement to Countrywide (but there is a direct endorsement from First Continental to Bank of America) this fact calls into question whether or not this allonge was created after the fact and for the purpose of litigation."[10]

Plaintiff also contends that the note and deed of trust create potential ambiguity as to whom the borrower needs to pay because the deed of trust permits transfers of the note without notice to the borrower. Because Plaintiff argues that an unnoticed transfer could create confusion as to whom to pay, he contends that the "original borrower would have the right through quiet title and declaratory action to inquire and have defined whom the current holder is."[11]

Plaintiff's proposed second amended complaint also adds additional statements regarding the pooling and servicing agreement. The proposed second amended complaint alleges that Plaintiff is a third-party beneficiary of the pooling and servicing agreement because the "mortgage pool trust" was "created for the sole purpose of procuring 'investor' money which then provided a source of funding" for loans, "including the loan made to the original purchaser that now affects this Plaintiff."[12] Plaintiff asserts that he "will present expert testimony that the banks and their investors came up with the 'mortgage pool trust' for the sole purpose of attracting investor money so that they would have funds available to make the loans to people like the original borrower in this case."[13]

---

[9] Prop. Second Am. Compl. ¶ 4.
[10] Prop. Second Am. Compl. ¶ 4.
[11] Prop. Second Am. Compl. ¶ 5.
[12] Prop. Second Am. Compl. ¶ 8.
[13] Prop. Second Am. Compl. ¶ 8.

The proposed second amended complaint maintains causes of action for declaratory judgment, violations of the UCC, and to quiet title. The proposed second amended complaint removes the references to the DCA and DTPA.[14]

Defendant opposes Plaintiff's motion for leave and argues that the amendment would be futile.

## II.

### A. Legal Standard for Deciding a Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While detailed factual allegations are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. However, a complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Id.* at 556. Although the court must take all of the factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

---

[14] Because Plaintiff removed all references to the DCA and DTPA in his proposed second amended complaint, and because Plaintiff removed explicit causes of action for violations of the DCA and DTPA in his amended complaint, the Court presumes that the sporadic references to the DCA and DTPA in Plaintiff's amended complaint were inadvertent and not meant as independent causes of action.

6

**B. Documents That May Be Considered**

The Supreme Court has held that in deciding a motion to dismiss, a court may consider documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 388 (5th Cir. 2010); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 547 (5th Cir. 2010) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) ("While the court generally must not go outside the pleadings, "the court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'"). In attaching documents to a motion to dismiss that are referred to in the plaintiff's complaint and are central to her claim, "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Whether the plaintiff has objected to the court's consideration of documents external to the complaint may be a factor that can be taken into account in determining whether to consider the documents. *Scanlan*, 343 F.3d at 536 (citing *Collins*, 224 F.3d at 498-99) (holding that "[t]he fact that the plaintiffs did not object to, or appeal, the district court's consideration of [documents attached to a motion to dismiss] was central to [the Fifth Circuit's] approval of that practice."). The district court may also take judicial notice of matters of public record. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *see also Norris v.*

*Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

Defendant attached several documents to its motion to dismiss, including the note and an allonge to the note, the deed of trust, an assignment document, and a corrected assignment document. All of these documents are central to Plaintiff's claims and Plaintiff refers to these documents throughout both the amended complaint and the proposed second amended complaint. The Court will therefore consider these documents.

Plaintiff filed a response to Defendant's motion to dismiss and attached several documents as well. Plaintiff attached the deed of trust, the assignment document, and the corrected assignment document, which had already been attached to Defendant's motion to dismiss. Plaintiff also attached a special warranty deed, a warranty deed, and an appointment of substitute trustee document. Plaintiff refers to the appointment of substitute trustee document repeatedly throughout his proposed second amended complaint and the document is central to one of Plaintiff's arguments. The document is also a matter of public record because it has been recorded. Thus, the Court will consider the appointment of substitute trustee document.

## C. Pleadings to Consider

To ensure that the Court is considering Plaintiff's best case, the Court will consider both Plaintiff's amended complaint and Plaintiff's proposed second amended complaint when ruling on Defendant's motion to dismiss.

## III.

**Standing**

Defendant moves to dismiss Plaintiff's amended complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendant argues that there is no justiciable controversy to support Plaintiff's declaratory judgment action because Plaintiff has not alleged that "anyone else is the holder and owner of the Note and Deed of Trust."[15]

Plaintiff, however, has not merely alleged a cause of action for declaratory judgment; rather, Plaintiff has also alleged a cause of action to quiet title. The Court will analyze whether Plaintiff has standing when considering whether Plaintiff has stated a claim to quiet title.

## IV.

**A. Plaintiff's Claim to Quiet Title**

**1. Legal Standard for Establishing a Claim to Quiet Title**

"The principal issue in a suit to quiet title is as to the existence of a cloud that equity will remove." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Angell v. Bailey*, 225 S.W.3d 834, 838 n.6 (Tex. App.—El Paso 2007, no pet.). "Any deed, contract, judgment or other instrument not void on its face that purports to convey an interest in or make any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

---

[15] Mot. Dismiss ¶ 10.

"The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "In other words, the purpose of a suit to quiet title is to invalidate the defendant's claim to title." *Ellis v. Buentello*, No. 01-12-00098-CV, 2012 WL 3528009, at *3 (Tex. App.—Houston [1st Dist.] Aug. 16, 2012, no pet.). Nonetheless, the plaintiff still "has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Hahn*, 321 S.W.3d at 531.[16]

To prevail on a claim to quiet title, a plaintiff must establish that the defendant: (1) created a hindrance to the plaintiff's title, having the appearance of a better right to title than his own, that (2) appears to be valid on its face, and that (3) for reasons not apparent on its face, is not valid. *Ellis*, 2012 WL 35280009 at * 3.

Here, Plaintiff's proposed second amended complaint alleges that he is the fee simple owner of the property at issue in this case pursuant to a general warranty deed that was issued upon purchase. Defendant claims a right to foreclose on the property. This alleged right to foreclose constitutes a "cloud" because it affects Plaintiff's interest in the property. Plaintiff's quiet title claim is based on the allegation that, although Defendant appears to have the right to foreclose based on the face of the note, deed of trust, and assignment documents, Defendant may in fact not be authorized to foreclose for reasons not apparent from the face of the documents. Thus, Plaintiff's attempt to prevent Defendant from foreclosing satisfies the elements of a claim

---

[16] It appears that there is some discord among Texas appellate courts as to whether an action to quiet title relies on the invalidity of the defendant's claim to the property or whether the action relies on the superiority of the plaintiff's claim to the property. *Compare Ellis*, 2012 WL 3528009 at *3 ("A suit to quiet title—also known as a suit to remove cloud from title—relies on the invalidity of the defendant's claim to the property."), *with Washmon v. Strickland*, No. 03-08-00372-CV, 2010 WL 670112, at *1 (Tex. App.—Austin Feb. 26, 2010, no pet.) ("In a suit to quiet title, a plaintiff must establish superior title, proving and recovering on the strength of his own title, not the weakness of the defendant's title."). However, the disagreement makes little practical difference because Texas courts do seem to agree that a plaintiff must both establish title to property and invalidate the defendant's claim to title in order to prevail on a claim to quiet title.

to quiet title. Plaintiff has also established standing to bring this lawsuit. *See Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1988) (holding that when a third party has a property interest, whether legal or equitable, that will be affected by a foreclosure sale pursuant to a mortgagor's deed of trust, the third party has standing to challenge the foreclosure sale to the extent that its rights will be affected by the sale).

However, although Plaintiff's claim satisfies the elements of a claim to quiet title, Defendant argues that Plaintiff's quiet title claim nonetheless fails because it is premised on arguments that fail as a matter of law. The Court will consider Plaintiff's arguments.

**2. Authority to Administer a Deed of Trust Foreclosure**

**a. The Note and the Deed of Trust**

Plaintiff argues that Defendant does not have the authority to foreclose pursuant to the deed of trust because Defendant cannot establish that it is the holder of the note. Plaintiff argues that Defendant must establish that it is the holder of the note because the deed of trust states that "only the lender may foreclose," and the deed of trust defines the lender in part as "any holder of the note who is entitled to receive payments."[17] Defendant argues that it is entitled to enforce the deed of trust regardless of whether it is the holder or owner of the note.

Chapter 51 of the Texas Property Code governs the procedure for conducting a foreclosure sale and authorizes either a mortgagee, or a mortgage servicer acting on behalf of a mortgagee, to sell real property under a "power of sale conferred by a deed of trust." *See* TEX. PROP. CODE. §§ 51.002, 51.0025; *see also* 15 MIKE BAGGETT, TEXAS PRACTICE SERIES: FORECLOSE LAW AND PRACTICE § 2.02 (2d ed. 2001). The Property Code defines a "mortgagee" as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry

---

[17] Prop. Second Am. Compl. ¶ 4.

system,[18] or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." TEX. PROP. CODE § 51.0001(4). The statute makes no reference to a requirement that the mortgagee produce the original promissory note and, consequently, there is no dispute that under Texas law production of the original note is not a prerequisite to administering a deed of trust foreclose. *See, e.g.*, *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *3-5 (Tex. App.—Austin Aug. 30, 2012, no pet. h.); *Crear v. JP Morgan Chase Bank N.A.*, No. 10-10875, 2011 WL 1129574, at *1 n.1 (5th Cir. March 28, 2011) (per curiam); *Miller v. Homecomings Fin., LLC*, Civ. A. No. 4:11-CV-04416, 2012 WL 3206237, at *3 (S.D. Tex. Aug. 8, 2012). However, while production of the original note is not required, the mortgagee must still establish that it has authority to act on behalf of the current holder or owner of the note. *See Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. March 26, 2012).

While Plaintiff argues that only the current holder or owner of the note can foreclose because the deed of trust secures payment only to the lender, Plaintiff fails to point out that the deed of trust also expressly grants MERS authority to act on behalf of the lender and the lender's successors and assigns. The deed of trust states as follows:

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note . . . .
> . . . .
> . . . Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's

---

[18] A "book entry system" is defined as "a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns." TEX. PROP. CODE § 51.0001(1).

successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.[19]

Texas courts have held that provisions in a deed of trust providing for the use of MERS are enforceable to the extent of the terms set forth in the document. *Bierwirth*, 2012 WL 3793190 at *5; *Athey v. Mortg. Elec. Registration Servicing, L.P.*, 314 S.W.3d 161, 166 (Tex. App.—Eastland 2010, pet. denied). Thus, pursuant to the deed of trust, MERS has the authority to act on behalf of the lender.

Plaintiff's argument that, under the deed of trust, "MERS has no authority with regard to the note" is irrelevant. To administer a deed of trust foreclosure, MERS is not required to own or hold the note itself. Rather, MERS need only have authority to act on behalf of the lender, and the deed of trust explicitly grants MERS this authority.

Accordingly, as long as MERS validly assigned its interest in the deed of trust to Defendant, there is no question that Defendant is properly authorized to foreclose on behalf of the lender in this case.

**b. The Assignments**

***i. The Face of the Assignments***

Two assignments are central to Plaintiff's claims. One assignment was executed on September 30, 2011. The assignment states:

> For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") . . . does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP . . . all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to

---

[19] *See* Doc. No. 12-2.

become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.[20]

The original lender is listed as "FIRST CONTINENTAL MORTGAGE, LTD." The document is signed by "Marie Barclay, Assistant Secretary" on behalf of MERS. The document is also notarized.

A second assignment was executed on November 28, 2011, in order to correct a recording error.[21] Like the first assignment, the second assignment states:

> For value received, the undersigned hereby grants, assigns and transfer [sic] to Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP all beneficial interest under that certain deed of trust . . . together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said deed of trust/mortgage.[22]

The assignment is signed by "Melanie D Cowan Assistant Secretary" on behalf of MERS.[23] The document is notarized.

On their face, the assignments appear to validly convey both the deed of trust and the note to Defendant.[24] The original assignment establishes that the deed of trust and the note were transferred from the original lender—MERS, as nominee for First Continental Mortgage Ltd.—to Defendant Bank of America. In the event that the first assignment had been ineffective due to a clerical error, the second assignment reaffirms the same transfer. There are no gaps in the chain of title. Nor has Plaintiff alleged that Defendant subsequently transferred the deed of trust.

---

[20] *See* Doc. No. 12-3.

[21] The initial assignment had been recorded as instrument number 20110181032. The assignment should have been recorded as instrument number 20090182240.

[22] *See* Doc. 12-4. The language of the assignment is in all capital letters, but the Court has reproduced the language in this opinion without all capital letters for clarity.

[23] Plaintiff asserts that the document is signed by a Michelle Cowan, but Plaintiff's statement appears to be inaccurate.

[24] Contrary to Plaintiff's contention, the assignments specifically purport to transfer both the deed of trust *together with the note*. Thus, Plaintiff's allegation that "[t]he assignment attempts to assign just the deed of trust" appears to be plainly incorrect. *See* Prop. Second. Am. Compl. ¶ 7.

14

Thus, the assignments establish that Defendant has the authority to administer a deed of trust foreclosure on behalf of the lender. Further, because Defendant is the last entity to whom the deed of trust has been assigned of record, Defendant qualifies as a "mortgagee" under the Texas Property Code. *See* TEX. PROP. CODE § 51.0001(4)(C).[25] Thus, from the face of the documents central to Plaintiff's claims, it appears that Defendant has the authority to foreclose on the property.

Nonetheless, Plaintiff argues that the assignments are invalid for reasons not apparent from the face of the documents. The Court will consider Plaintiff's argument regarding the invalidity of the assignments.

### ii. *Plaintiff's Argument that the Assignments are Invalid for Reasons Not Apparent from their Face*

Plaintiff argues that the assignments are invalid for two reasons. Specifically, Plaintiff alleges that both of the assignments were unauthorized and that they constitute "an invalid, void and fraudulent attempt to close the link in the chain of title."[26] Plaintiff also alleges problems in connection with a controlling pooling and servicing agreement.

### (1) Standing to Challenge the Assignments

Defendant contends that Plaintiff lacks standing to challenge the validity of the assignments because it is "well established" that a borrower lacks standing to challenge the assignment of a deed of trust.[27] Defendant cites numerous federal district courts that have embraced this argument and found that a mortgagor lacks standing to challenge an assignment of

---

[25] The assignments were also recorded before the date set for foreclosure. The first assignment was executed on September 30, 2011 and recorded on October 10, 2011. The second assignment was executed on November 28, 2011 and recorded on December 2, 2011. Foreclosure was set for April 3, 2012.
[26] Prop. Second Am. Compl. ¶ 13.
[27] Mot. Dismiss ¶ 11.

the mortgage between mortgagees. None of the district courts that Defendant cites, however, rely on any Texas state court case or statute.

"Texas has long followed the common law rule which permits a debtor to assert against an assignee any ground that renders the assignment void or invalid." *Miller v. Homecomings Fin., LLC*, No. 4:11-CV-04416, 2012 WL 3206237, at *5 (S.D. Tex. Aug. 8, 2012); *see also Tri–Cities Constr., Inc. v. Am. Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ); *Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.); *see also Slaughter v. Qualls*, 162 S.W.2d 671, 674 (Tex. 1942) (a void deed passes no title, but a voidable deed passes title subject to the right to have it set aside). As stated in *Glass*:

> The law is settled that the obligors of a claim may defend a suit brought thereon on any ground which renders the assignment void, but may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not have to pay the same claim twice.

330 S.W.2d at 537.

Despite this exception, however, the Court finds that Plaintiff does not have standing to challenge the assignment of the deed of trust in this case for several reasons.

First and foremost, Plaintiff in this case is not the obligor of the claim. Rather, Carlos Guerra, the original borrower, is the obligor. Plaintiff has not alleged that he assumed the mortgage loan upon purchasing the property from Mr. Guerra.[28] Nor does Plaintiff allege that he is acting as an agent under power of attorney for Mr. Guerra.[29] Thus, because Plaintiff is not an

---

[28] Indeed, it seems unlikely that Plaintiff assumed the loan because the note and deed of trust state that the loan is not assumable without approval from the Department of Veterans Affairs. Plaintiff does not allege that he sought or obtained approval from the Department.

[29] At one point in his proposed second amended complaint, Plaintiff does mention that he is "attempting to enforce via the equitable interest in the property he procured via the deed." Prop. Second Am. Compl. ¶ 8. However, this statement does not imply that Plaintiff is acting as an agent under power of attorney on behalf of Mr. Guerra. Even if

obligor of the loan at issue in this case, Plaintiff is not exposed to the risk of double liability on the loan. Therefore, Plaintiff does not have standing to attack the validity of the assignment of the mortgage.

Second, even if Plaintiff were acting as an agent for the original borrower—which has not been alleged—Plaintiff's challenges to the assignment fail as a matter of law.

Plaintiff argues that the assignments were unauthorized and constitute "an invalid, void and fraudulent attempt to close the link in the chain of title."[30] Plaintiff alleges that neither Ms. Barclay nor Ms. Cowan were authorized to execute the documents on behalf of MERS and also alleges that Ms. Barclay is not an agent or listed officer of MERS and that Ms. Cowan is an employee of Recontrust. Plaintiff argues that the assignments are void and, as a result, argues that "Defendant cannot prove that they [sic] are the valid proper assignee of the note and deed of trust."[31]

Plaintiff is correct that a forged deed would be void. *See Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 603 (Tex. App.—Houston [14th Dist.] 1994, writ denied).[32] Ordinarily, if an assignment of a mortgage were void, a borrower could be exposed to the risk of double liability because the original lender may not be bound by the assignment and therefore, theoretically, could come forth attempting to collect on the note, claiming that the foreclosure had not discharged the debt. In this case, however, the factual allegations in the pleadings and the documents central to Plaintiff's claims suggest that the risk of double liability for the original borrower is not plausible.

---

the Court were to consider the warranty deed that Plaintiff has produced, which is a matter of public record because it has been recorded, the Court's holding would not change because the deed does not mention that Plaintiff has the authority to act as an agent for Mr. Guerra.
[30] Prop. Second Am. Compl. ¶ 13.
[31] Prop. Second Am. Compl. ¶ 14.
[32] "Forgery" is defined as "[t]he act of fraudulently making a false document or altering a real one to be used as if genuine." BLACK'S LAW DICTIONARY (9th ed. 2009).

Defendant has produced a copy of the note with an attached allonge. The allonge is specifically indorsed to Defendant from the Vice President of First Continental Mortgage, Ltd., the original lender. Because the note is indorsed to Defendant, the document suggests that Defendant is entitled to receive payments on the note and, as a result, that Defendant is the party entitled to enforce the deed of trust.[33] Plaintiff has not alleged any facts suggesting that Defendant may not be entitled to enforce the note. For example, Plaintiff has not affirmatively alleged that Defendant is not in possession of the note, that Defendant forged the allonge, or that Defendant has subsequently assigned the note to another party. Thus, taken together, the pleadings and the documents central to Plaintiff's claims suggest that Defendant is the party entitled to enforce the note and deed of trust and that, accordingly, the original borrower is not exposed to a risk of double liability.

Nonetheless, Plaintiff argues that there is a fact issue "as to who the current holder of the note is" because the note itself does not bear an indorsement and because the allonge contains both a blank indorsement and a restricted indorsement to Defendant.[34] However, Plaintiff's observations are not sufficient to support a cause of action. Plaintiff has not affirmatively alleged that either the allonge or the indorsement is forged. Nor has Plaintiff specifically alleged that Defendant is not in possession of the note. While Plaintiff expresses suspicion as to why the note contains both a restricted indorsement and a blank indorsement, Plaintiff stops short of actually

---

[33] *See* TEX. BUS. & COMM. CODE ANN. § 1.201(21) (defining a holder as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession").

[34] Specifically, Plaintiff states:

> The note itself bears no endorsement stamp. The allonge contains a restricted endorsement directly to Bank of America signed by a Shelley Aboloff as vice president of First Continental Mortgage Ltd. The note also contains a blank endorsement from Bank of America. The blank endorsement would purport to transfer interest to whomever holds the note. However, why would Bank of America endorse the note in blank if Bank of America was the current holder? All of these issues raise an issue of fact as to who the current holder of the note is.

Prop. Second Am. Compl. ¶ 4.

alleging fraudulent conduct in connection with the note. The lack of factual allegations is fatal to Plaintiff's claim. Even if Plaintiff's observations were consistent with Defendant's liability, the Court cannot find that the original borrower would plausibly be exposed to the risk of double liability absent any affirmative factual allegations impugning the validity of the indorsement to Defendant.[35]

Plaintiff also argues that the appointment of trustee document "points to fact [sic] that Bank of America took over this loan as a result of its merger with Countrywide."[36] From this contention Plaintiff concludes that "because the loan originated from First Continental and there is no endorsement to Countrywide (but there is a direct endorsement from First Continental to Bank of America) this fact calls into question whether or not this allonge was created after the fact and for the purpose of litigation."[37] Again, Plaintiff stops short of actually alleging that Defendant forged the note or allonge; instead, Plaintiff merely posits that the appointment of substitute trustee document "calls into question" whether Defendant forged the allonge. Moreover, Plaintiff's contention that the appointment of substitute trustee document establishes that Countrywide held the loan at some point is not supported by the document. The appointment of substitute trustee document states:

> ORIGINAL MORTGAGEE: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC
>
> CURRENT MORTGAGEE: BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP."[38]

---

[35] *See Iqbal*, 556 U.S. at 678 (pleaded facts that are merely consistent with a defendant's liability stop short of the line between possibility and plausibility).
[36] Prop. Second Am. Compl. ¶ 4.
[37] Prop. Second Am. Compl. ¶ 4.
[38] *See* Doc. No. 15-5.

This language does not suggest that Countrywide ever held the loan. Rather, the document reaffirms that Defendant was the current holder of the loan at the time the document was executed. Whether Defendant chooses to include the name of an acquired company when executing a document is not necessarily an indication that the acquired company formerly held a loan.[39] Furthermore, even if Countrywide did once hold the loan, that fact would not controvert the validity of the indorsement on the allonge or suggest that Defendant is not currently entitled to collect on the note.[40]

Plaintiff further argues that confusion could arise as to whom to pay because the deed of trust permits transfer of the note without notice to the borrower. However, Plaintiff does not allege facts suggesting that there is any confusion, or the potential for any confusion, in this case. Plaintiff's conclusory allegation that Defendant cannot prove that it is the holder of the note does not controvert the face of the note and the indorsement to Defendant.

In sum, the Court finds that the documents central to Plaintiff's claims suggest that Defendant is the party entitled to enforce the note. Because Plaintiff has not affirmatively alleged any facts suggesting otherwise, the Court cannot find that the original borrower could plausibly be exposed to a risk of double liability. Accordingly, even if Plaintiff had standing to challenge the invalidity of the assignments on behalf of the original borrower, Plaintiff's challenges to the assignments fail as a matter of law.

---

[39] The Court recognizes that the appointment of trustee document could be consistent with a finding that Countrywide might once have held the loan. However, the document itself does not show that Countrywide necessarily held the loan at one point.

[40] Plaintiff also argues that the appointment of trustee document is signed by an "infamous robosigner" who did not have authority to sign the document on behalf of Defendant. *See* Prop. Second Am. Compl. ¶ 4. It is unclear how this statement fits into Plaintiff's argument. Even assuming that the document were void due to forgery, the document's invalidity would not invalidate the indorsement on the allonge. The Court also recognizes that it seems unlikely that Defendant did not authorize the execution of the document because Defendant does not contest the document's authenticity.

### c. The Pooling and Servicing Agreement

In his proposed second amended complaint, Plaintiff alleges that "if the loan was 'securitized'" it would be controlled by a pooling and servicing agreement.[41] Plaintiff alleges that the pooling and servicing agreement "states that all transfers or assignments should take place on or before a date within the agreement of or [sic] within 120 days thereafter."[42] Plaintiff alleges that he is a third-party beneficiary of the pooling and servicing agreement because the trust pool was created "for the sole purpose of procuring 'investor' money which then provided a source of funding for these loans (including the loan made to the original purchaser that now affects this Plaintiff)."[43] Plaintiff asserts that he will "present expert testimony that the banks and their investors came up with the 'mortgage pool trust' for the sole purpose of attracting investor money so that they would have funds available to make the loans to people like the original borrower in this case," concluding that "these pools were created directly for the benefit of the Original Borrower and this Plaintiff attempting to enforce via the equitable interest in the property he procured via the deed above described."[44] In the alternative, Plaintiff also asserts that Defendant would not have authority to foreclose "should the note in question have not made its way into a mortgage pool."[45]

Plaintiff's arguments regarding the pooling and servicing agreement fail to state a plausible claim for several reasons. First, Plaintiff is not a party to the original mortgage loan and has not alleged that he is serving as an agent for the original borrower. Thus, even assuming the

---

[41] Prop. Second Am. Compl. ¶ 9.
[42] Prop. Second Am. Compl. ¶ 9.
[43] Prop. Second Am. Compl. ¶ 9.
[44] Prop. Second Am. Compl. ¶ 9.
[45] Prop. Second Am. Compl. ¶ 9.

original borrower was a third-party beneficiary of the pooling and servicing agreement, Plaintiff in this case would not be a third-party beneficiary.

Second, Plaintiff has not alleged facts suggesting that even the original borrower would have been a third-party beneficiary of the pooling and servicing agreement. Under Texas law, "[t]he fact that a person might receive an incidental benefit from a contract to which he is not a party does not give that person a right of action to enforce the contract." *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). "A third party may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit." *Id.* "The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *Id.* "Consequently, a presumption exists that parties contracted for themselves unless it 'clearly appears' that they intended a third party to benefit from the contract." *Id.* (quoting *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503–04 (Tex. 1975)). "A court will not create a third-party beneficiary contract by implication." *Id.* Plaintiff's factual allegations have not established, or even suggested, that the pooling and servicing agreement "fully spelled out" that the original borrower was a third-party beneficiary to the mortgage pool. Rather, Plaintiff's factual allegations suggest, at most, that the pooling and servicing agreement was created to attract money from investors and that the original borrower might have received an incidental benefit by receiving a loan from capital that was raised. As an incidental beneficiary, the original borrower would not be entitled to enforce the pooling and servicing agreement. This Court's holding is also in accord with other federal district courts that have considered whether, under

Texas law, a mortgagee has standing to challenge compliance with a pooling and servicing agreement as a third-party beneficiary. *See, e.g.*, *Davis v. Bank of Am., N.A.*, No. 3:11–CV–3276–B, 2012 WL 2679452, at *3 (N.D. Tex. July 6, 2012) ("Plaintiffs lack standing to challenge the alleged Pooling and Servicing Agreement, because they have not alleged facts that they were parties to or third-party beneficiaries of the agreement."); *Metcalf v. Deutsche Bank Nat'l Trust Co.*, No. 3:11–CV–3014–D, 2012 WL 2399369, at *4 (N.D. Tex. June 26, 2012) ("Plaintiffs lack standing to challenge this alleged lack of compliance with the PSA because they have not pleaded facts that allow the court to draw the reasonable inference that they are in privity with or are third-party beneficiaries of the PSA."); *Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619, 625–26 (S.D. Tex. 2010) ("[The plaintiff] is not a party to [the pooling and servicing agreement] and did not become a party, agent or assignee of a party, or a third-party beneficiary of the agreement, because his loan was 'bundled' and sold or transferred under this agreement. As a result, he has no ability under Texas law to sue for breach of this contract.").

Third, even if Plaintiff had alleged facts establishing that the original borrower were a third-party beneficiary of the mortgage pool and therefore entitled to enforce the agreement, Plaintiff has not alleged facts suggesting that the pooling and servicing agreement required transfers to be made within a certain time period. Rather, Plaintiff's allegation that the pooling and servicing agreement stated that all transfers "should" take place within a certain time period suggests that the language of the pooling and servicing agreement may have been precatory.

Finally, Plaintiff's allegation that the mortgage was even transferred into the mortgage pool trust is speculative. Plaintiff states that "if" the loan was securitized then it would be

governed by a pooling and servicing agreement. Plaintiff does not allege that the loan was actually transferred into the pool.

Accordingly, the Court finds that Plaintiff's allegations regarding the pooling and servicing agreement fail to state a claim sufficient to survive a motion to dismiss. Thus, because Plaintiff's claim to quiet title is predicated on arguments that all fail as a matter of law, Defendant's motion to dismiss Plaintiff's claim to quiet title is granted.

## B. UCC Violations

Plaintiff alleges that Defendant "cannot prove the . . . elements of holder status" and cites sections 3.301, 3.309, and 3.418(d) of the Texas Business and Commerce Code in support of his claim.[46] Plaintiff also alleges that "[p]ursuto to § 3.203 of the Texas Business and Commerce Code, Defendant Bank has no right to enforce the instrument due to the fraud and illegal acts of transferring the note and deed of trust."[47] Finally, Plaintiff alleges that pursuant to sections 3.301 and 3.309, Defendant "is not the holder or owner of the note and deed or [sic] trust and cannot establish the chain such that Defendant can prove that Defendant bank has the right to foreclose."[48]

Rather than constituting an independent cause of action, the Court finds that Plaintiff's references to the UCC are merely offered in connection with Plaintiff's claim to quiet title and his argument that Defendant must be the owner or holder of the note prior to administering a

---

[46] *See* Prop. Second Am. Compl. ¶ 15. Texas has adopted the Uniform Commercial Code and codified it at Title 1 of the Texas Business and Commerce Code. Section 3.301 of the Business and Commerce Code governs what individuals are entitled to enforce an instrument, section 3.309 governs when a person not in possession of an instrument may be entitled to enforce the instrument, and section 3.418(d) concerns payment or acceptance of an instrument by mistake.

[47] Prop. Second Am. Compl. ¶ 16. Section 3.203 of the Business and Commerce Code governs the transfer of instruments and the rights acquired by transfer.

[48] Prop. Second Am. Compl. ¶ 17.

deed of trust foreclosure. The Court has disposed of Plaintiff's argument above. Defendant's motion to dismiss Plaintiff's alleged causes of action under the UCC is therefore granted.

## C. Declaratory Judgment

Plaintiff alleges causes of action for declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code.

Declaratory relief is a procedural device for granting a remedy and does not create any substantive rights or causes of action. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996). Determining whether to award declaratory relief is a matter of district court discretion. *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991).

Because all of Plaintiff's claims have failed to survive Defendant's motion to dismiss, Plaintiff's request for declaratory judgment is not supported by a live cause of action and therefore must be dismissed. The Court also notes that, even if one of Plaintiff's claims had survived Defendant's motion to dismiss, Plaintiff would not have been entitled to relief under the Texas Declaratory Judgment Act because the Act is procedural and federal courts apply their own procedural rules. *See Bloss v. Moore*, 269 F. App'x 446, 449 (5th. Cir. 2008) (citing *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 413 (5th Cir. 2006)).

Defendant's motion to dismiss Plaintiff's cause of action for declaratory judgment is therefore granted.

## Conclusion

In light of the foregoing analysis, the Court finds that Plaintiff has failed to state a claim to relief that is plausible on its face. Accordingly, Defendant's motion to dismiss Plaintiff's amended complaint (Doc. No. 12) is GRANTED.

The Court has considered both Plaintiff's amended complaint and Plaintiff's proposed second amended complaint. Because the proposed second amended complaint fails to cure the deficiencies of Plaintiff's amended complaint, the Court finds that permitting the amendment would be futile. Accordingly, Plaintiff's motion for leave to file a second amended complaint (Doc. No. 19) is DENIED.

Plaintiff's motion for leave to amend the scheduling order (Doc. No. 25) is dismissed as moot.

The Clerk is directed to enter judgment that Plaintiff take nothing on his claims. Defendant is awarded its costs of court and must file a Bill of Costs in the form required by the Clerk of Court within fourteen days of the judgment.

It is so ORDERED.

SIGNED this 7th day of February, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE